CASE 50—INDICTMENT—OCTOBER 19.

# Kaelin v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. AN INDICTMENT FOR A COMMON LAW FELONY SHOULD CHARGE that the act was done "feloniously," or "with a felonious intent." The use of no other words will supply the omission of such an allegation. An indictment for murder failing to allege that the killing was done "feloniously," a demurrer thereto should have been sustained.

2. THE TRUE TEST OF A GOOD INDICTMENT for a felony at common law is, that if the defendant should admit on the trial all of the material facts alleged as constituting the crime charged, he would not be permitted to plead or give in evidence any fact that would acquit him, such as self-defense.

3. IT WAS ERROR TO ADMIT IN EVIDENCE THE EXCLAMATIONS MADE BY BY-STANDERS, soon after the offense was committed, to the effect that the defendant ought to be hung, although he was present and made no reply.

4. THE LEGISLATURE CAN NOT AUTHORIZE THE USING OF DEPOSITIONS AGAINST THE ACCUSED in criminal and penal cases, but may authorize the accused to use depositions in his behalf; as the right of the accused, however, to use depositions in his behalf is purely statutory, he can not use them in any state of case not provided for by statute.

KOHN & BARKER FOR APPELLANT.

1. Inheritance is the most frequent cause of insanity, and the proof in this case shows beyond contradiction that insanity is hereditary in appellant's family. (Practice of Medicine by Professor G. B. Wood, vol. 2, p. 672; 1 Warton & Stilles' Medical Jurisprudence, secs. 366 and 367.)

2. It was error to refuse to allow appellant to take the depositions of witnesses in Switzerland to prove insanity. There is no reason that forbids the taking of depositions on behalf of the defendant in a criminal case. (Greenleaf on Evidence, vol. 1, sec. 320; Criminal Code, sec. 153.)

3. It is not in the power of a trial judge in a felony case, upon the first application for a continuance, to place the defendant upon terms to try at the next calling of the case.

4. The indictment is fatally defective in that it does not charge that the act of defendant was *feloniously* committed. (Wharton on Criminal Law, sec. 399; Bishop on Criminal Procedure, vol. 2, sec. 542; Chitty on Criminal Law, sec. 242; Archbold's Criminal Practice and Plead-

ings, p. 300; Curtis v. People, 1 Breese, Ill., 199; s. c., 1 Scam., 120; Bishop on Statutory Crimes, sec. 387; 2 Dallas, 228.)

5. The case of Commonwealth v. Jane, 3 Met., 19, does not establish a different doctrine in Kentucky. The decision in that case was based upon sections 128 and 129 of the Criminal Code of 1854, which have been repealed. (Code of 1876, sections 3 and 122, and page 93; White v. Commonwealth, 9 Bush, 180; Ward v. Commonwealth, 14 Bush, 235.)

6. The cries or exclamations of by-standers were not a part of the *res. gestæ*, and were not competent. (French v. Commonwealth, 7 Ky. Law Rep., 747; Bradshaw v. Commonwealth, 10 Bush, 576.)

7. The reasons assigned by appellant to the reporter for killing his wife were not competent evidence. (Libby v. Commonwealth, 12 Bush, 1.)

ALPHEUS BAKER ON SAME SIDE.

1. It was error to instruct the jury, in effect, that they could not acquit the accused on the ground of insanity if, at the time he committed the offense, he knew right from wrong. The court should have instructed them as it was asked to do, that although they believed the defendant killed the deceased, knowing it to be wrong, yet if they also believed "that he was driven to it by an uncontrollable and irresistible impulse arising, not from natural passion, but from an insane condition of the mind, they must find him not guilty on the ground of insanity." (Smith v. Commonwealth, 1 Duv., 224; State v. Felter, 25 Iowa, 67; Graham v. Commonwealth, 16 B. M., 587; Life Ins. Co. v. Terry, 15 Wall., 580.)

2. This position is not weakened, but strengthened, by the decision in Fitzpatrick v. Commonwealth, 81 Ky., 357.

WM. G. BAIRD AND WHITAKER & PARSONS OF COUNSEL ON SAME SIDE.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. The instruction as to insanity was as favorable to appellant as he was entitled to ask, and is broader and more favorable than the one refused. (Fitzpatrick v. Commonwealth, 81 Ky., 357.)

2. The question as to the sufficiency of the indictment is fully settled by the case of Jane v. Commonwealth, 3 Met., 22.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant, Michael Kaelin, was indicted by the grand jury of Jefferson county for the murder of his wife, Caroline Kaelin.

The trial jury in the Jefferson Circuit Court found him guilty of said charge, and fixed his punishment at ·death.    His motion for a new trial having been over-ruled, and sentence of death having been pronounced upon him, he appeals to this court.

He complains, first, that the lower court erred in overruling his demurrer to the indictment because of its insufficiency in law.

So much of the indictment as is material to the investigation of the question raised by the demurrer is as follows : "The grand jurors of Jefferson county * * * accuse Michael Kaelin of the crime of murder, committed in manner and form as follows, to-wit : The said Michael Kaelin * * * unlawfully, willfully, cruelly, and of his malice aforethought, did kill, slay and murder his wife, Caroline Kaelin," etc.

The indictment fails to allege that the act of appellant, in killing his wife, was feloniously committed.

The contention of appellant is, that the failure to allege that the act of killing was feloniously committed renders the indictment fatally defective.    If this position is well taken, then the lower court should have sustained the demurrer to the indictment; and failing to do so, a new trial should have been granted, as the error runs through the entire proceedings thereafter had.

In order to keep an intelligent view of the question at issue before the mind, it must be remembered that the appellant is not accused in the indictment of any crime created by statute, nor of any crime defined by statute, but of the common law crime of murder, which the statute of the State does not define, but simply

fixes the punishment to be inflicted for committing the crime.    So in determining the question of the sufficiency or insufficiency of the indictment before us, we must of necessity resort to the rules of the common law.

Mr. Bishop, in the first volume of his work on Criminal Procedure, section 534, says: "The indictment should show plainly on its face whether the crime was treason, felony or misdemeanor.    So that, while the pleadings were in Latin, the indictment for treason must contain the word *proditorie*, and for felony, the word *felonice*.    The omission indicated that the offense was no more than a misdemeanor.    'For,' says Starkie, 'it seems to be clear that no offense as described in any indictment can amount to more than a misdemeanor if it be not laid to have been committed either *proditorie* or *felonice*.'    And these distinctions are continued, at least as to common law offenses, down to the present day, and in this country the indictment for treason alleges that the act was committed traitorously ; for felony, that it was done feloniously, and where neither of these words is used, the offense is only a misdemeanor."

Also, the same author says, in second volume, section 542 : "Murder and manslaughter being equally felonies, the criminal act should in each be averred to have been done feloniously."

So also, Wharton, in the first volume of his work on Criminal Law, section 399, says: "The word feloniously is essential to all indictments for felony, whether at common law or statutory ; and in several cases technical and appropriate words are frequently requisite in

adding to the description of the offense. Thus, in an indictment for murder, it is essential to state, as a conclusion from the facts previously averred, that the said defendant, him, the said C. D., in manner and form aforesaid, feloniously did kill and murder—a term of art, which in no case can be dispensed with—on the same principle, it must also be alleged, that the offense was committed of defendant's malice aforethought—words which can not be supplied by the aid of any other; and if any of these terms be omitted, the indictment is defective."

So also, Mr. Chitty, in his work on Criminal Law, section 242, says: "There are certain terms which are usually inserted in the part of the indictment we are now examining, which mark out the color of the offense with precision, and which are absolutely necessary to determine the judgment. Thus, every indictment for treason must contain the word traitorously, and feloniously must be introduced in every indictment for felony; and these words are so essential that if the word feloniously be omitted in an indictment for stealing a horse, it would only be a trespass. * * * As a conclusion from the facts averred, it must be stated that the defendant feloniously did kill," etc.

Also, Sir William Blackstone, in the fourth book of his Commentaries, page 306, says: "The offense itself must be set forth with clearness and certainty, and in some crimes particular words of art must be used, which are so appropriated by the law to express the precise idea which it entertains of the offense, that no other words, however synonymous they may seem, are capable of doing it. Thus, in treason the facts must be

laid to be done treasonably. In all indictments for felonies the adverb feloniously must be used, * * * for these alone can express the intent—the very offense."

Further quotations from the writers on criminal law are unnecessary. It is sufficient to say, that they hold that it is absolutely necessary, in all indictments for felonies at common law, to use the word feloniously to indicate the crime itself.

The courts of England, says Mr. Bishop, have uniformly held that the word feloniously is indispensably necessary in all indictments for felony at common law.

The courts of last resort of nearly every State in this Union hold the same doctrine.

The Supreme Court of Missouri, in the case of Jane v. The State, 3 Mo., 61, holds that "there is no proposition more clear in law than in all indictments for felony the indictment must charge the act to have been done feloniously, or with a felonious intent."

Also, in the case of the State v. Murdock, 9 Mo., 739, the court says: "Every offense which is made a felony by statute must be charged to have been done feloniously, whether it was a felony by common law or not. The word feloniously is indispensably necessary in all indictments for felony, whether statutory or by common law." Also, to the same effect are the cases of the State v. Williams, 30 Mo., 364, and the State v. Deffenbacher, 51 Mo., 26.

In the case of Bowler v. The State, 41 Mississippi Reports, 570, the court says: "It is settled that the word feloniously is indispensable in every indictment for a felony, and hence the motion to quash the indictment ought to have been sustained."

In the case of Mott v. The State, 29 Arkansas Reports, 148, the court says: "The word feloniously must of course occur in the indictment where the offense is a felony. * * * The indictment charges that appellant willfully and maliciously set fire to and burned the court-house, but the word feloniously is omitted. * * * The authorities, with scarcely an exception, agree that it is absolutely necessary, in charging a felony, to charge that the act was feloniously done, * * * * that the substance of a good common law indictment should be preserved. If one matter of substance may be dispensed with, another may be, and where is the limit to the innovation? * * * This court has repeatedly held that, in indictments for felonies, the word feloniously is substantive in charging the offense —a word that has a fixed and well defined legal meaning, understood by bench and bar."

In the case of Edwards v. The State, 25 Arkansas Reports, p. 446, the court says: "The indictment charges that the defendant 'purposely and of deliberate and premeditated malice,' made the assault and gave the mortal wound, and, in the conclusion, that he did 'purposely, and of deliberate and premeditated malice, kill and murder the deceased.' Premeditated and aforethought are synonymous, and premeditated malice and malice aforethought are in sense and meaning the same; and either form of expression may, with equal propriety, be used, and the indictment does, therefore, in fact, charge the offense to have been committed with malice aforethought. But the omission of the word feloniously is not supplied by any other, and the authorities, with scarcely an exception, agree that

it is absolutely necessary, in charging a felony, to allege that the act was feloniously done."

In the case of the People v. Olivera, 7 Cal., 403, Chief Justice Murry said: "In my opinion, it would be impossible to allege a felony without the word felonious, as it is necessary to show the intent with which the act was done. A crime may be the result of wickedness or malice, and at the same time may not be committed with a felonious intent."

Many other cases might be quoted from other States to the same effect as the foregoing ones, but it is unnecessary to do so, as they only repeated the principle of the cases quoted.

However, before concluding our reference to authorities upon the subject, we will make a quotation from the case of the United States v. Stoats, 8 Howard's Supreme Court Reports, pp. 44, 45. The court says: "When words or terms of art are used in the description, that have a technical meaning at common law, these should be followed, being the only terms to express, in apt and legal language, the nature and character of the crime."

"In all cases of felonies at common law, and some also by statute, the felonious intent is deemed an essential ingredient in constituting the offense, and hence the indictment will be defective, even after verdict, unless the intent is averred. The rule has been adhered to with great strictness, and properly so, where this intent is a material element of the crime. * * * This view accounts for the necessity of the averment of a felonious intent in all indictments for a felony at common law, and also in many cases when

made so by statute; because, if it is used in the sense of the law to denote the actual crime itself, the felonious intent becomes an essential ingredient to constitute it, the term signifying the crime committed, and not the degree of punishment, the felonious intent is of the essence of the offense; as much so as the intent to maim or disfigure, in the case of mayhem, or to defraud, in the case of forgery, are essential ingredients in constituting these several offenses."

The foregoing cases, and others similar to them, arose upon indictments for acts done which were declared by statute to be felonies, but did not declare that to constitute the crime the acts should be committed with a felonious intent.

These cases, therefore, bear with peculiar force upon the question at issue here, and fully demonstrate the absolute necessity of using the word feloniously in the indictment under consideration, the crime charged being a common law offense, as denoting the actual crime itself.

The true test of a good indictment for a felony at common law is, that if the defendant should admit on the trial all of the material facts alleged in the indictment as constituting the crime with which he was charged, he would not be permitted to plead or give in evidence any fact that would acquit him, such as self-defense. Now, could the defendant admit all of the material facts alleged in this indictment as constituting the crime of murder, and then plead and prove that he acted in self-defense? If he could, the indictment is clearly insufficient. Suppose, then, that the experiment is made; he offers his proof of self-defense,

but the Commonwealth's Attorney says to him : You have admitted that you unlawfully killed this woman ; he replies, No ; I only admitted the material allegations of fact charged in the indictment as constituting the crime with which I am charged ; and the word unlawfully is unnecessary and immaterial in an indictment where the crime exists at common law and is manifestly illegal, nor can it supply the place of the word feloniously, which indicates the crime itself. The word unlawfully may indicate that a trespass or some lower grade of offense was committed, but not that of a felony. (See 1 Chitty on Criminal Law, 241.) Besides, my defense is excusable homicide, which presupposes some fault or slight illegality of conduct on my part. Again the Commonwealth objects to the evidence, because he has admitted that he did the killing willfully and cruelly. He replies that, admitting the word willfully to be a material allegation, yet the killing in self-defense is necessarily done willfully. It does not necessarily imply malice, or that the killing was done with a felonious intent. I can admit that I did the killing willfully, and still show that I acted in self-defense. As to the word cruelly, I am not called upon to admit that, because it is an unnecessary and immaterial charge. Besides, if I acted in self-defense, it makes no difference how cruel a stroke was given. It is only strong evidence of malice, but is not conclusive of guilt. But, says the Commonwealth's Attorney, you have admitted that you did the killing with malice aforethought. He replies, I admitted that when I did the killing I had malice toward the deceased, but malice does not denote the act itself. The word felo-

niously is essential to fix the actual crime of felony. The felonious intent is the essential ingredient to constitute it; without such intent existing in fact or by construction of law, no felony at common law can be committed. The word feloniously denotes the crime itself. The proof of malice, therefore, is admissible, not as constituting a felony, because a felony may exist without malice, but to increase the punishment of the felony.

In the nature of things, the words felonious and malice are not equivalent or synonymous terms—not of the same legal import. (The State v. Gove and Wife, 3 N. H., 561.)

Therefore, as the words malice aforethought do not charge or denote a felony, but only increase the punishment when the felony is established, I can show that I did not in fact commit a felony; I have, it is true, admitted that, at the time of killing, I had malice toward the deceased, but that fact does not prevent me from showing that I acted in self-defense. The ground of self-defense does not preclude the idea of malice; the jury is not told that if they believe that the accused acted without malice and in self-defense they must acquit. The feelings of ill-will or of malice of the accused toward the deceased do not preclude him from relying on self-defense. He may have those feelings toward the deceased, yet he has the right to strike and kill in his necessary self-defense. Those feelings are evidence against him to show that his plea of self-defense is a sham, etc., but, even though established, can not deprive him of the benefit of his plea.

So we see that all of the material allegations alleged

in the indictment as constituting the crime of murder might be admitted, yet the defendant would have the right, notwithstanding the admission, to plead self-defense. On the other hand, if it were charged in the indictment, in addition to the other charges therein, that the killing was feloniously done, thereby indicating and fixing the crime itself, then, that fact being admitted, no plea of self-defense could be heard.

For the foregoing reasons, we think that the indictment is insufficient, and the demurrer to it should have been sustained.

The case of Jane v. The Commonwealth, reported in 3 Met., 18, is relied on by the Commonwealth as sustaining the sufficiency of this indictment.

In that case the indictment was for murder, but the word feloniously was omitted. All of the other material allegations, however, were made. There was no demurrer to the indictment. After the trial and conviction of the defendant, she moved to arrest the judgment, which motion was overruled by the trial court. She appealed from that ruling to this court. This court did not hold that the word feloniously was not a necessary averment in the indictment, but simply held that this court, under the Criminal Code of Practice then in force, could not reverse the judgment of the lower court in overruling the motion in arrest of the judgment of conviction, because the substantial rights of the appellant on the merits were not prejudiced by overruling the motion.

The 129th section of that Code provided that "no indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect

which does not tend to the prejudice of the substantial rights of the defendant on the merits."

The provision *supra* of the old Code was left out of the present Code of Practice, nor is there any similar provision contained therein; so the case of Jane v. The Commonwealth is not now an authority controlling the present question. Besides, in this case there was a demurrer entered to the indictment, which, unlike the motion in arrest of judgment under the old Code, wherein the merits of the case entered into the consideration of the motion, goes directly to the legal sufficiency of the indictment.

The second ground of objection to the ruling of the court below relates to the following evidence of Mr. Baldwin, which the court permitted to go to the jury:

Question by the Commonwealth: "Heard you any talk of what they (the persons assembled there) would do with the man that killed the woman?"

Answer. "Some said to hang him."

Question. "What threats were made upon that occasion within the hearing of this man?"

Answer. "While I was there, several expressed themselves that he ought to be hung," etc.

This evidence was clearly incompetent.

This court, in the case of Bradshaw v. The Commonwealth, 10 Bush, 577, held similar evidence to be incompetent.

Also, in the case of Werner v. The Commonwealth, 80 Ky., 387, this court held similar evidence to be incompetent.

The exclamations or expressions of opinion of the by-standers did not come from any one acting in con-

cert with the defendant, nor did the exclamations come from any one concerned in the fact of killing. The exclamations came from mere by-standers, giving expression to the opinion that appellant ought to be hung, etc. Such evidence was clearly hearsay, and should have been rejected by the court. The fact that the appellant heard the exclamations, and did not deny the implied charge contained in them that he was the guilty party, did not make the evidence competent. He was, if he had been in a condition to do so, under no obligation to deny the charge. No charge was made directly to him that he had killed the woman. The exclamations of an excited crowd, as to what ought to be done with him, he was not called upon to answer. His silence, therefore, was no implied admission of his guilt.

The instruction No. 4 given by the court gives the law of insanity in accordance with the views of this court in the case of Brown v. The Commonwealth, 14 Bush, 398, and is fully as favorable to the appellant as he is entitled to.

The court did not err in refusing to continue the case and issue a commission to take depositions in Switzerland on behalf of appellant. There is no inherent power in a common law court to issue commissions to take depositions to be read in behalf of litigants in a civil or criminal case. The right to use the depositions of witnesses in a common law court depends upon statutory regulations. The Legislature of the State has the right to allow defendants in criminal cases to take and use the depositions of witnesses in their behalf, and to say how, and under what circumstances, they may be

taken, etc. There is no constitutional inhibition against the State allowing defendants in criminal cases to take and use the depositions of witnesses in their behalf. The Constitution entitles the accused in criminal and penal cases to meet his accusers face to face, and to be confronted with the witnesses against him. The State, therefore, can not authorize the taking and using of depositions of witnesses against him, but he may use the depositions of witnesses in his behalf, under any state of case that the Legislature may allow. His right, however, in this regard is controlled by the Legislature.

The Legislature of this State has provided that the defendant in a criminal case may take the depositions of his witnesses to be used in his behalf, if they are about to leave the State without his procurement or consent, or are physically unable to attend for examination in court, or that their death is apprehended. As the right to take and use depositions in common law cases and in criminal cases in behalf of the defendant is a statutory right, and the Legislature of the State having said in what state of case the defendant in a criminal case may take the depositions of witnesses to be used in his behalf, it follows that he can not take the depositions of witnesses in any state of case not provided for by the Legislature.

We think that the court erred in not sustaining the demurrer to the indictment, and in permitting the witness Baldwin to testify as to what the people said who had assembled at the house of appellant just after the killing, and in not granting appellant a new trial.

The case is reversed, with directions for further proceedings consistent with this opinion.