CASE 27—INDICTMENT FOR HOMICIDE—JANUARY 10.

## Franklin v. Commonwealth.

APPEAL FROM MARSHALL CIRCUIT COURT.

1. PRACTICE IN CRIMINAL CASES—MOTION TO QUASH INDICTMENT FOR PRESENCE OF COUNTY ATTORNEY IN THE GRAND JURY ROOM.—Under the law the county attorney is in effect an assistant to the Commonwealth's attorney and may properly assist him in the performance of his duties in the grand jury room. It was proper, therefore, to overrule a motion to quash the indictment made on account of the presence of the county

Franklin v. Commonwealth.

attorney in the grand jury room during the examination of witnesses.

2. SAME—APPEALS—REVERSIBLE ERROR.—If it were otherwise, however, the ruling of the trial court upon a motion to quash an indictment is not subject to exception.

3. RIGHT OF DEFENDANT TO INSPECT MINUTES OF TESTIMONY TAKEN BEFORE THE GRAND JURY.—It is within the sound discretion of the trial court to decline to require the Commonwealth's attorney to produce for the inspection of the defendant the minutes of the testimony heard before the grand jury.

4. SUNDAY—EXTENDING TERM TO INCLUDE.—It is within the sound discretion of the trial court to extend the term to include Sunday to enable the jury to make and return a verdict in a criminal case pending before them on the last day of the term.

5. CRIMINAL LAW—EVIDENCE.—Conversations between persons in the absence of the defendant were incompetent, being mere hearsay.

6. SAME.—Conversations in the presence of the defendant not calling for a denial by him or implicating him in any way are incompetent.

7. SAME.—On the trial of an indictment against a defendant for killing a girl whom the defendant was suspected of having seduced, it was incompetent to permit witness to state that the defendant had said a few days before that he had had to do with some girl a few nights before that, and that her brother came near seeing him, the evidence not identifying the girl in any way.

8. SAME.—It is incompetent to substantiate the testimony of a witness given on the trial, by part of a conversation between him and his father, in the absence of the accused, at a different time and place from the conversation which he was called upon to testify to.

9. SAME.—One of the witnesses for the prosecution having denied on cross-examination that he had stated after the examining trial that appellant had come clear and that he knew that he had nothing to do with the killing of Daisy Sullivan, it was proper to permit him to be contradicted by showing that he had made such statement.

10. SAME.—A person, whom the evidence tended to connect in a criminal intimacy with the deceased, having denied such intimacy on cross-examination, it was competent to contradict him by showing that he had admitted such intimacy. The

proof as to who killed Daisy Sullivan was circumstantial and such evidence tended to show that the witness had the same motive for the crime as the defendant.

11. SAME—EXPERT TESTIMONY.—It was competent to show by persons who had had many years of experience with fire arms that in their judgment from such experience the wound upon the person of the deceased was made with a rifle loaded first with a bullet and then with shot put down on the ball—the evidence showing that the defendant's gun was a shot gun.

REED, GREER & OLIVER, FOR APPELLANT.

1. The illegality of the presence of the county attorney in the grand jury room during the examination of witnesses was ground for quashing the indictment and was good in arrest of judgment.

2. The court had no power to extend the term over Sunday for the purpose of giving the jury an opportunity to deliberate and of receiving the verdict.

3. The court should have permitted the defendant an opportunity to inspect the minutes of the testimony taken before the grand jury.

4. The court erred in admitting and rejecting evidence.

Citations: Ky. Stat., Art. 2, Chap. 8; Secs. 127, 135, 963, 964, 965; Rice, Criminal Evidence, pp. 389, 501; Underhill on Criminal Evidence, Secs. 122, 124, 212, 213, 263, 332; Morgan v. Com., 14 Bush, 114; Kennedy v. Com., Id., 361; Coppage v. Com., 3 Bush, 532; Arthur v. Mosby, 2 Bibb., 589; Coleman v. Henderson, 5 Lit. Sel. Cases, 171; Meece v. Com., 78 Ky., 586; Bales v. Com., 11 Ky. Law Rep., 297; Reid v. State, 22 Gratt., 924 (See also 1 Green's Crim. Law. Rep., p. 267); Reid v. State, 53 Ala., 402; s. c. Am. St. Rep., vol. ——, p. 290; 25 Am. Rep., 627; 12th. Am. Dec., 291; 7 Am. Dec., 576; 36 Maine, 466; 5 Ind., 370; 9 Ind., 587; 14 Ind., 39, 34 N. H., 202; 74 N. C., 187; 41 Kan., 336; Crim. Code., Secs. 110, 253, 254; Central Law Journal, vol. 11, p. 447; *in re* Millington, 24 Kas., 224.

W. S. TAYLOR, ATTORNEY-GENERAL, FOR APPELLEE. (Brief not in the record.)

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

The appellant, Noah Franklin, appeals to this court from a judgment of the court below sentencing him to the

penitentiary for life, on the charge of murdering Daisy Sullivan. Several errors are relied on for reversal.

The county attorney went into the grand jury room, and assisted in the examination of the witnesses. Appellant moved on this ground to quash the indictment. The court overruled the motion, and in this, we think, there was no error. The county attorney is, under our statute, in effect an assistant of the Commonwealth attorney, and may properly assist him in the court room or elsewhere, as he may direct. Besides, under section 281 of the Criminal Code, the decisions of the court upon motions to set aside an indictment are not subject to exception, and so the decision of the court below was final on this point.

It appears from the record that the grand jury reduced to writing the testimony of the witnesses before it, and furnished to the Commonwealth attorney the evidence so taken. The appellant moved the court to require the production of this paper on the trial. The motion was overruled, and complaint is now made of this also. By section 112 of the Criminal Code, the proceedings of the grand jury are required to be kept secret. By section 113, a member of the grand jury may be required by the court to disclose the testimony of a witness examined before the grand jury for the purpose of ascertaining its consistency with the testimony of the witness given on the trial, or in a proceeding against a witness for perjury or false swearing. We do not think the motion in this case fell within any of the exceptions named in the statute. It was the duty of the foreman of the grand jury also, under the statute, to communicate to the attorney for the Commonwealth, when requested, the substance of the testimony before them; but we do not think that the court below should, in the exercise of sound discretion, have

required the Commonwealth attorney to communicate to the defendant the evidence so reported to him by the foreman of the grand jury.

The trial of the case was begun on September 28, 1897, in the Marshall circuit court. That term of the court terminated on Saturday, October 16, 1897, and court began in McCracken county on the following Monday, October 18th, in the same circuit. The evidence was heard, and the argument of counsel completed, and the case finally submitted to the jury, some time during the day of October 16th; and, when midnight arrived, the jury returned into court, and stated that they had not yet agreed upon a verdict. The appellant then moved the court to discharge the jury and adjourn court, because the term of court had expired, and the court had no power legally to hold the jury together longer, or to hold court longer; but the court overruled the motion, and made an order extending the term so as to include Sunday, October 17th, in order that the jury might further consider the case, and arrive at a verdict, to all of which the defendant objected, and, his objection being overruled, he excepted. On the next day (Sunday) the jury reported that they had agreed, and returned into court their verdict, finding the defendant guilty as charged, and fixing his punishment at confinement in the penitentiary for life. The defendant objected to the verdict being received, and moved the court to set it aside which the court refused to do, but entered no judgment on the verdict, and adjourned until court in course, after making an order allowing defendant until next term to file his grounds for new trial, and tender a bill of exceptions. Appellant earnestly insists that the power of court expired at midnight on the last day of the term, and that it had

[ 16 ]

no authority to keep the jury together or receive the verdict on the following Sunday.

It is well settled in this state that, in a criminal case like this, the court may receive the verdict on Sunday. Meece v. Com., 78 Ky. 586; Bales v. Com., 11 Ky., L. R., 297, [11 S. W., 470]. Counsel distinguishes this, case from both of the cases decided. In Meece's case the term of court continued the next week, and the Sunday on which the verdict was returned intervened between two weeks of the regular term; but here the regular term ended on Saturday night, and another term in the same circuit began on the following Monday. In Bales' Case the trial was had at a special term called for the week preceding the regular term in the same county; and, the jury not having returned a verdict on Saturday night at the end of the special term, the court held them together on Sunday, and, having received their verdict on that day, proceeded on the next day to enter judgment upon it. In that case the Sunday upon which the verdict was returned intervened between the special term and the regular term, and the court had jurisdiction of the case at both terms; but here another term in the same circuit began on the following Monday. The circuit judge was authorized to extend his term if it did not interfere with any other term in his district, Ky. Stat. Sec. 964. The extension of the term in this case to include Sunday, October 17th, did not interfere with any other term in the district; and, if the circuit judge may lawfully receive a verdict on a Sunday intervening between two weeks of his term, we see no reason why he may not extend his term, to include Sunday following the expiration of his term, so as to enable the jury to arrive at a verdict. The trial of this case had consumed something

Franklin v. Commonwealth.

like three weeks. The jury had only a short time to con-
sider the great mass of testimony submitted to them; and
we do not think that the court below abused a sound dis-
cretion in extending the term so as to give them an oppor-
tunity to arrive at a verdict.

The other grounds of reversal relied on relate to the
action of the court in receiving and rejecting evidence
over objection of appellant. For a clear understanding
of them, it will be necessary for us to state briefly the
facts of the case. The deceased, Daisy Sullivan, was a
young woman, about seventeen years of age, and about
to become a mother. There was proof tending to show
that the appellant was the author of her ruin. There was
no direct evidence connecting him with her murder, the
proof relied upon by the Commonwealth being wholly cir-
cumstantial, and rather vague. It appeared that she lived
with her father and mother in a double log house, having
a hallway between; that, between eight and nine o'clock
on the night she was killed, she was sent out in the yard
by her mother to get a vessel for her, and, as she passed
along the hall between the two rooms, on this mission,
was shot and killed. Her father, who was in the room
with her mother, did not go out to see what happened to
her, for fear, he says, that he would be shot; and she lay
there in the hall until her brothers returned from hunting,
about ten o'clock that night. The theory of the Common-
wealth is that appellant murdered her, because he was ac-
cused of being the author of her ruin; but there was no
proof of his presence about the premises at the time, and
he insists that he had nothing at all to do with it. That
she was murdered there is no question; the only question
is, did the defendant commit the deed?

The court permitted J. M. Sullivan, the father of Daisy,

and his wife, her mother, to detail a conversation between them after the shooting, in their room. This was clearly incompetent, as frequently held by this court. Combs v. Com., 15 Ky., L. R., 660, [20 S. W., 234]; Kaelin v. Com., 84 Ky., 354, [1 S. W., 594]; Stroud v. Com., 14 Ky., L. R., 179 [19 S. W., 976]. For the same reason, the court should not have allowed the testimony as to what Howard Sullivan and Oscar Woods stated to Alonzo Wyatt and Dolph Wyatt as to whose dog they had with them. These statements were subject to all the objections to hearsay evidence.

The court allowed proof to be made by two witnesses that they saw Martin Franklin, the father of appellant, the morning after Daisy Sullivan was killed, and he asked them if they had heard about Daisy Sullivan being killed, or about her killing herself; that his little boy Clint had been up to the post office that morning, and heard that somebody had been shot, and that he supposed it was Daisy Sullivan, but all his family was at home that night except Belle, and he was glad of it, Noah Franklin being present and near enough to hear the conversation, but saying nothing, being at the time engaged in a conversation with another party about his horse getting his foot in a bridge. We think this evidence was incompetent and improperly admitted. It was no more competent than if appellant had not been present at all, for the reason that there was nothing in the statement which called for a denial by appellant, or implicated him in any way. Underhill on Criminal Evidence, Section 122; Rice on Criminal Evidence, p. 501. It does not appear that appellant heard these statements, and he may not have heard them, as he was himself talking to another; but, whether

Franklin  v.  Commonwealth.

he heard them or not, there was nothing in what his father said to require a correction from him.

Wes Locker and John Locker were permitted to state that defendant said a few days before, February 28, 1896, that he had had to do with some girl a few nights before that, and that her brother came near seeing him. There is nothing to connect this girl with Daisy Sullivan so far as the record before us shows. A great latitude is necessarily allowed in cases like this, but the evidence should be limited to the crime charged, and not allowed to include other derelictions.

Ed. Howard testified on the trial, in effect, that defendant told him, something over a month before Daisy Sullivan was killed, that he was going to kill her, and that he (Howard) then advised him how to load his gun, and told him that young girls usually went out just before retiring, and that they left the door open because they were afraid; that, by being around at this time of night, appellant could shoot Daisy Sullivan; that, by the light of the door, he could see plainly who it was, and make no mistake; and that the dog usually slept upstairs, and would not be in the way. The witness was then allowed to state that he told his father what appellant had said to him, and that his father advised him to say nothing about it; so he did not tell J. M. Sullivan or any of his family. His father was then introduced, and allowed to state that his son had told him this, and that he had given him this advice at this time. This was error. The witness could not substantiate his testimony given on the trial by proof of a conversation had between him and his father in the absence of the accused, and at a different time and place from the conversation which he was called to testify to.

It appeared in evidence that appellant was discharged

on the examining trial, and the witness Ed. Howard was asked on cross-examination if he did not say to W. J. Cox and two others, after this trial, at a time and place specified, that appellant had come clear, and that he knew that he had nothing to do with the killing of Daisy Sullivan. He denied making this statement, and the court refused to allow him to be contradicted on this point by the other witnesses. . Without his testimony we do not think appellant could possibly have been convicted, and it seems to us that his statement at the time that he *knew* appellant had not killed Daisy Sullivan was so different from his testimony given on the trial that the court should have admitted proof of his having made these statements, for the purpose of impeaching his testimony.

There was evidence tending to show that Ed Howard had been intimate with Daisy Sullivan, and that his intimacy had continued within the period when her child was begotten. He was asked on cross-examination if he had not made statements to different parties admitting intimacy with her. He denied making these statements, and denied being with Daisy Sullivan after January 25, 1895. The appellant then offered to show that he had made these statements, and it seems to us the proof should have been admitted. The proof was wholly circumstantial as to who killed Daisy Sullivan, and, if Ed. Howard had the same motive for killing her as appellant, this was a competent fact to be considered by the jury. It also showed his bias, as appellant's conviction might shield him. We think any proof was competent which would tend to show that Ed. Howard or J. M. Sullivan was the father of Daisy Sullivan's unborn child.

The appellant offered to prove by Dick Heath and several others that they had had many years' experience with

firearms, and that, in their judgment, from their experience with firearms, the wound in Daisy Sullivan's person was made with a rifle loaded first with a bullet, and then with shot put down on the ball; that they had seen such effects often produced by rifles loaded in this way; that such effects could not be produced by a load from a shotgun; and they gave the reasons for their conclusions. It seems to us that this was a subject on which persons especially acquainted with firearms might testify as experts. The testimony was important, for, if the wound could not have been made with appellant's gun, it was a circumstance to be considered by the jury in determining whether he killed deceased or not. It seems to us that the rulings of the court in admission and rejection of evidence prejudiced the substantial rights of the accused. The judgment is therefore reversed, and the cause is remanded to the court below for further proceedings consistent with this opinion.