## Harlan v. Commonwealth.

(Decided Jan. 16, 1934.)

2

B. F. DENHAM, MAX HARLIN, V. H. BAIRD and BAIRD &
GARNETT for appellant.

BAILEY P. WOOTTON, Attorney General, and H HAMILTON
RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

W. E. Harlan was indicted by the grand jury of the Monroe circuit court for the willful murder of O. T. Peden. He was tried at the December, 1932, term of the Monroe circuit court, found guilty of manslaughter, and sentenced to confinement in the penitentiary for 12 years. He appeals.

The case was tried on appeal in this court on the 26th day of September, 1933, and reversed on the ground that the verdict of the jury was rendered, received by the court, and judgment entered thereon the day after the regular term of the court had expired. The record before us at that time did not disclose that any order extending the term of the court had been made.

A petition for a rehearing was filed on behalf of appellee with a motion to supplement the record by filing a properly certified copy of the order extending the term, which order, for some reason, was not copied or made a part of the record before us at the time the case was tried as above stated. Appellant objects to the filing of this supplemental record at this time. It is insisted that the order purporting to extend the term of the court was entered after the term had expired, which was on the 17th day of December, 1932. The order now before us which is properly certified by the clerk reads:

"Monroe Circuit Court,

"December Term, 12th day,

"17th day of December, 1932.

"It appearing that this Court has been in session for the full term of twelve days, and that the business is not yet finished, and that there is no

other court in this Judicial District until February 1, 1933, and that it is necessary to continue this term; it is now ordered that the present December Term be and same is now extended for the purpose of disposing of all unfinished Commonwealth and Criminal and Civil business now pending this court's docket.

    "[Signed]
        Chas. C. Marshall, Special Judge.
    "[Signed]
        J. C. Carter, Judge."

It is conceded that the regular term ended on the 17th day of December, 1932. The caption of the order discloses that the order was made on the 17th day of December, 1932, and, there being no evidence to the contrary, we take it as being the correct date of the making and entering the order.

The regular circuit judge of the Monroe circuit court was disqualified to try this case, and the Chief Justice of this court designated the Honorable Chas. C. Marshall, judge of the Twelfth judicial district, to try the case. The evidence was concluded in the late afternoon on Saturday, December 17th, and the cause submitted to the jury. It being apparent that the jury might not reach a verdict before midnight at which time the regular term expired, the above order was entered extending the term and signed by both the regular judge of the court and by Judge Marshall, the special judge.

It is insisted that, a special judge having been designated to try this case, the regular judge had no power or right to make an order in the case or to extend the term of the court for the purpose of finishing the trial, and that the special judge had no authority or right to extend the term of court or to receive a verdict on Sunday. The right of a special judge respecting the trial of a case which he has been designated to try is governed by section 971-1 et seq. of the Kentucky Statutes. Section 971-2, authorizing the Chief Justice to designate a circuit judge to act as special judge, in part reads:

    "* * * And the circuit judge so designated by the Chief Justice shall have all the power of the regular Judge of the court over which he is designated to preside."

This question was fully discussed and the law applic-

4

able thereto fully and aptly stated in the recent case of Hall v. Eversole's Adm'r, 251 Ky. 296, 64 S. W. (2d) 891. It was held in the case, supra, that a special judge has the right to extend the term and is vested with the same power and authority pertaining to the case which he has been designated to try as a regular judge has. Without giving further time and space to the discussion of the law on this question, it is sufficient to say that a reading of the Hall-Eversole Case, supra, and authorities cited therein, is conclusive on this question. It follows, therefore, that the special judge had the right to extend the term for the purpose of continuing and completing the trial of this case.

It is next insisted that the court could not receive a verdict on Sunday, as was done in this case. The order extending the term "for the purpose of disposing of all unfinished Commonwealth and Criminal and Civil business now pending this court's docket" was broad enough to include necessary time to finish the trial of this case, and the fact that the verdict was returned and received on Sunday does not render it void. Bales v. Commonwealth, 11 S. W. 470, 11 Ky. Law Rep. 297; Franklin v. Commonwealth, 105 Ky. 237, 48 S. W. 986, 20 Ky. Law Rep. 1137.

It is further insisted for appellant that the supplemental record (order extending the term) cannot now be considered on the petition for a rehearing, on the theory that a record brought up to this court on schedule filed in the clerk's office of the lower court as prescribed by section 737 of the Civil Code of Practice is presumed to be the complete record, and that all parties interested have consented to try the appeal on such record. In support of this contention are cited the cases of Clevinger v. Nunnery, 140 Ky. 592, 131 S. W. 519; White's Adm'x v. White et al., 148 Ky. 492, 146 S. W. 1101; and Bryant v. Hamblin, 183 Ky. 716, 210 S. W. 786. The rule enunciated in the cases, supra, seems to be based upon the theory that such rule prevails when the record is brought to this court by an *appellant* pursuant to schedule filed in the clerk's office of the lower court. It may not be amiss to say here that the record before us does not disclose that any schedule was filed in the clerk's office below.

It is the duty of the appellant to have copied and transmitted to this court the entire record, or at least so much thereof as is necessary to enable the court to

correctly determine the case on its merits, and, if in this the appellant fails to the prejudice of the appellee, the court will allow such corrections as will enable the court to properly determine the case.

In the case of Robertson v. Robertson's Adm'r, 185 Ky. 503, 214 S. W. 972, 973, it is said: "It has long been the established practice of this court to permit the *appellee,* at any time before the final decision, to supply omitted portions of the record * * * which are essential to the correct decision of the case"—and citing a number of other cases of similar holdings.

The case of Miller Creek R. R. Co. v. Barnett, 160 Ky. 845, 170 S. W. 202, 203, involved a question of supplementing the record because of an error or other failure on part of the clerk in not copying the instructions given by the court. After the case had been tried and reversed by this court, the appellee sought to have the record corrected by supplying the instructions given by the court below. The appellee's attorney filed his affidavit in support of the motion to supplement the record, in which he stated that he never saw, and had no opportunity to see, the record as prepared by the clerk, and did not know of the mistake until the opinion was handed down. In the instant case one of the attorneys representing the commonwealth filed his affidavit in which he stated that he did not see the record nor had no opportunity to see it after it was copied by the clerk and before it was transmitted to this court, and that he did not know that the order extending the term had not been copied by the clerk and included in the record. In the Miller Creek-Barnett Case, supra, the rule is thus stated:

> "The rule is that, where the appellant, under whose direction the transcript is prepared, has lost his case upon an imperfect record, the court will not, on rehearing, permit the record to be changed and the case retried."

But this rule does not apply to the *appellee* when its rights are prejudiced by the failure of the *appellant* to see that a proper record is transmitted to this court. In the late case of Owings v. Rider, 242 Ky. 408, 46 S. W. (2d) 506, this rule is very aptly discussed and stated with respect to the respective rights of appellants and appellees to have a record corrected. On page 409 of the opinion in 242 Ky., 46 S. W. (2d) 506, 507, supra,

the court, quoting from section 104, page 183, of Miller's Appellate Practice, states the rule in this language:

"The court will not grant *appellant* a rehearing in order to enable *him* to perfect the transcript. But in cases in which the complete record is required, the *appellee* will be permitted to supply omitted portions of the record after judgment, where the incomplete transcript has been filed by the *appellant;* and, a rehearing may be granted *appellee* thereon."

In view of the facts presented by this record, in light of the authorities above cited, it is our conclusion that the appellee should be and is permitted to file and make a part of the record on this appeal the supplemental order offered, which will be considered in the disposal of the case.

We now come to consideration of the case on its merits. The appellant and decedent were neighbors and lived on adjoining farms. They had had a lawsuit involving the question of the right of decedent to a passway over a certain part of the premises of appellant, which litigation was determined in favor of Peden, the decedent, and some ill feeling existed between appellant and deceased, as a result of the litigation. Peden, the deceased, and Ralph Arnold, on the day deceased was killed by appellant, were taking a radio to the home of the deceased, who lived near the premises and home of appellant. In order to avoid going over muddy or undesirable road, they sought to go through the premises of appellant. According to the evidence of witness Arnold, who was introduced in behalf of the commonwealth, in going over or through the premises of appellant, it was necessary to go through two gates. Arnold and deceased were traveling by automobile. When they came to the first gate, deceased got out of the car and opened the gate. Arnold drove the car through the gate, and deceased closed the gate and got back into the car. Appellant was coming from his barn with a sack of corn on his shoulder. On approaching the second gate at the end of the barn lot, deceased again got out of the car to open that gate, and he and appellant got to the gate at about the same time. Deceased started to open the gate, and appellant pushed it back and said: "You can't go through here," and at the same time pushed the gate, whereupon deceased started to open it again, and appellant pushed him back again and said:

"Don't touch that gate." Deceased said: "Keep your hands off me,", and started back towards the gate, and appellant shot him. We further note the evidence of Arnold as shown by the following questions and answers thereto:

"8. What was Mr. Peden doing at the time Mr. Harlan shot him? A. He started back, it seemed, to open the gate again, his hands were out in front of him at the time. When he was shot he threw his hands up and the shot went through his hand and went through the side of his head and came down back of his ear.

"9. How many shots were fired? A. Only one.

"10. Just show the jury the position Mr. Peden's hands were in at the time the shot was fired? A. He had his hands out something like this [indicating] Mr. Harlan had pushed him back. He was not a very large man. He had his hands somewhat in this position reaching for the gate at the time. When the gun was drawn his hand was thrown up."

It further appears in the testimony of Arnold, on being asked to tell the jury what occurred after the shooting, he answered as follows:

"A. I was sitting in the car. After he fired the shot he put the gun back in his pocket and turned around toward the car. I opened the door and got out. He says 'Well, you saw it.' I said 'Yes.' He said 'You saw him try to shoot me.' I said 'Mr. Harlan, Mr. Peden looks like he is hurt, we better get some help.' I walked around to where Mr. Peden was and Mr. Albany was coming down toward us. We picked Mr. Peden up and brought him back beside the car and Mr. Harlan says 'We have a witness here. I want you to tell him you saw him try to shoot me.' I said 'Let's get Mr. Peden on up to the house, he neews to get a doctor.' * * *"

Arnold further stated that he took a gun out of deceased's overall pocket after he was shot. The witness Arnold and appellant were the only eyewitnesses to the killing. The testimony of other witnesses introduced for the commonwealth was somewhat of a collateral nature. However, it was stated by a number of

witnesses that for some time appellant had been objecting to people passing through his premises, and had said, in substance, that he was "going to put a stop to it and he would take the matter into his own hands, * * * and that it would not be good for the Pedens if he caught them working on that road through there."

Appellant, testifying in his own behalf, after telling about meeting deceased at the gate, stated in substance that, when he got within a few feet of the right-hand side of the gate and the car stopped, Peden, the deceased, passed him going to the left-hand side of the gate to open it; that Peden passed him and turned across to get on that side of the gate, and as appellant passed the end of the gate deceased shoved it against him. Appellant said: "What is the matter, Mr. Peden?" and dropped the sack of corn from his shoulder; deceased said: "Get out of my way. * * * I have had enough of you and I am going to kill you," and threw his hand back and drew his gun and pointed it at appellant over the gate, and he then got his gun as quick as he could and fired; that he fired the shot to save his own life.

Appellant further testified that the witness Arnold took the gun from deceased's hand after he was shot, instead of taking it out of deceased's pocket. Within a very short time after the shooting, Clarence Albany appeared on the scene, and it is testified by appellant that in the presence of Albany he (appellant) asked Arnold to tell just what he saw happen, and Arnold said in substance that Mr. Peden, the deceased, drew his pistol on Mr. Harlan, and that Mr. Harlan "beat him to it." Arnold denied making the alleged statement. He admitted that appellant asked him to tell Albany what he saw happen, but he evaded answering the question, as set out in his testimony quoted above. When asked why he did not answer or respond to appellant's request to tell Albany what he saw happen, he said, in substance, that he (meaning appellant) had killed one man and he might kill another, or words of like import. Albany corroborated appellant in his statement that Arnold made the statement with respect to Arnold's answer to his request to tell what he saw happen.

The court admonished the jury to consider Arnold's statement, if he made such statement, as contradictory evidence only, of which ruling much complaint is made by counsel for appellant. It is insisted that the evi-

dence should have been admitted as substantive evidence as a part of the res gestæ.

It is insisted that Arnold being in company with the deceased, he was a joint actor or participant in the trouble and for this reason his statement should have been admitted as substantive evidence. The evidence does not disclose that Arnold took any part in the trouble or that there was any controversy directly or indirectly between him and appellant. The fact that Arnold came to the place in company with the deceased is not sufficient to constitute him a party to the controversy. It is a well-settled rule that statements of bystanders not parties to the controversy or action, are not admissible as a part of the res gestæ. In the circumstances, it is our conclusion that Arnold was a bystander only, and the court's ruling relating to his testimony was proper. Kaelin v. Commonwealth, 84 Ky. 354, 1 S. W. 594, 8 Ky. Law Rep. 293; L. & N. R. R. Co. v. Sinclair, 171 Ky. 569, 188 S. W. 648.

It was testified by a number of witnesses that Arnold at various times and places in detailing how the killing occurred, made substantially the same statements as testified to by appellant and Albany, stating that the deceased first drew his pistol and appellant "beat him to it," and that it was a case of "have to." Among the witnesses testifying to these statements was one Borders. In the rebuttal testimony for the commonwealth, it sought to impeach Borders for truth and veracity, etc. Witnesses D. B. Smith, Sidney Peden, and D. R. Smith all testified that they were acquainted with the reputation of Borders from what the people generally said about him in the neighborhood where he resided, and that his reputation was bad. But on cross-examination these witnesses admitted that it had been 8 or 10 years since Borders lived in the community where they lived and where they knew him, and that for the past 8 or 10 years before the trial Borders had lived a distance of about 50 miles from the neighborhood of the witnesses, and that they did not know anything about what his neighbors said about him in the vicinity where he then lived or anything about his reputation in that community. It is insisted that the court erred in admitting the evidence of the witnesses respecting the reputation of Borders because the time of which they testified they knew his reputation was too remote from the time they testified in this trial. In the case of

Mitchell v. Commonwealth, 78 Ky. 219, 39 Am. Rep. 227, it is said:

> "When the witness has a permanent and long-continued residence in the community in which it is attempted to impeach him, the evidence of bad character, at a time long anterior, should not be admitted until a basis is laid by other proof tending to show that the character [of the witness] is then bad."

In the case of Alexander et al. v. Hill, 108 S. W. 225, 227, 32 Ky. Law Rep. 1147, it is said:

> "A witness' reputation for veracity cannot be impeached by evidence that at a period many years prior thereto it had been bad, but such testimony must relate to a period of time reasonably near the time at which the testimony is offered."

See, also, Fletcher v. Commonwealth, 239 Ky. 506, 39 S. W. (2d) 972. In the circumstances it was error to admit the testimony of the three witnesses above named. But there were a number of other witnesses who testified that Arnold made the alleged contradictory statements, which fact was well established aside from the evidence of the witness Borders, and his testimony was only cumulative. If Borders had been the only witness who testified to the alleged contradictory statement of Arnold, it might have been material to the issue. But, in view of the abundance of other testimony pertaining to the same fact, it is not reasonable to presume that the jury disbelieved a number of other witnesses and would have believed the testimony of Borders had he not been impeached.

It is a well-settled rule that the court will not grant a new trial on the ground of the admission or exclusion of cumulative evidence when the fact in issue has been established by other witnesses. Walkup v. Commonwealth, 20 S. W. 221, 14 Ky. Law Rep. 337; Bryan v. Commonwealth, 33 S. W. 95, 17 Ky. Law Rep. 965.

We do not deem it necessary to give a further detailed discussion of the evidence. It is sufficient to say that the evidence is conflicting and was therefore properly submitted to the jury. It has been repeatedly held by this court that, if there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury. Common-

wealth v. Boaz, 140 Ky. 715, 131 S. W. 782; Roaden v. Commonwealth, 248 Ky. 154, 58 S. W. (2d) 364; Branham v. Commonwealth, 223 Ky. 238, 3 S. W. (2d) 629; Hall v. Commonwealth, 231 Ky. 473, 21 S. W. (2d) 799; Mullins v. Commonwealth, 230 Ky. 624, 20 S. W. (2d) 442. Nor will this court reverse a verdict of guilty sustained by some evidence, although it is against the preponderance of the evidence. Bourne v. Commonwealth, 234 Ky. 842, 29 S. W. (2d) 561; Gilbert v. Commonwealth, 228 Ky. 19, 14 S. W. (2d) 194; Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.

The whole court sitting.