## McGahan v. Commonwealth.

(Decided Jan. 22, 1935.)

B. J. BETHURUM and H. C. KENNEDY for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is by Roland McGahan from a judgment of manslaughter and five years' imprisonment for the killing of Columbus Ard in Somerset on October 15, 1933.

The defendant related a series of threats and attacks upon him dating from about a year before when he was attending the funeral of his niece and Ard had disturbed the services. The effect of this evidence is that the deceased and his companions had persistently insulted and abused the defendant while he had always sought protection and tried to evade them, even to the extent of moving out of the neighborhood into another part of the county. It does not seem necessary to recite

these incidents nor the several threats to kill him,. which were communicated to McGahan. There is corroborative evidence as to some of these things and practically none to the contrary. The defendant was 65 years old and weak physically. The deceased was 27 years old, weighed 265 pounds, and had a bad reputation for peace and good order.

Coming to the day of the tragedy. According to the evidence presented by the commonwealth, Ard and five or six companions had been summoned to Somerset as witnesses in a case set for trial that day. They were walking south on Vine street on their way to get some whisky. McGahan and Elisha Burton were coming in the opposite direction. As they met, McGahan spoke to one member of the party, and the deceased said,. "Hello Role," in an ordinary tone, to which the appellant responded, "Damn you, I told you not to speak to me." Leon Ard, the deceased's brother, spoke up and said, "Don't do that" several times. McGahan stepped three or four paces into the street, pulled a pistol, and shot Ard in the left side, and he died about a half hour later. McGahan then turned the weapon on other members of the party, particularly Leon Ard, who ran, but he did not fire at them. The deceased was not armed, but had been drinking, and had a pint of liquor which he handed to a friend before the ambulance came, with the statement that "he didn't want them to find that on him." He had not attempted or done anything to McGahan. His hands were in his pocket or under the bib of his overalls, and he threw up his right hand just before he was shot. This is the evidence of four of the deceased's companions. A woman sitting on her porch about a half square away testified that McGahan pushed Ard back with his left hand and then shot him, and Ard threw up his hand as if to balance himself. Another bystander substantially corroborates this testimony. A deputy sheriff quickly on the scene searched Ard and found no weapon on him. However,. he had been walking about during the interval, and had had time to dispose of any pistol he may have had at the moment of the shooting. Leon Ard testified that about thirty minutes before the killing the defendant, with his hand on his gun, came up behind him and said,. "Oh, yes, I am fixed for you." This is corroborated. About nine months before McGahan was heard to make

a threat that he would "do plenty for the Ard boys if they fooled with him."

The defendant denied that he had approached or threatened Leon Ard, but testified that Ard had come to him with a knife, and, when he said to Ard, "You aim to knife me did you?" he put the open knife in his pocket. A friend warned him that he was going to get killed or "get in bad," and he went over to a bank to get out of the way. All during the day he had evaded meeting up with the Ards. At the time of the killing he was going to the courthouse on certain business and unexpectedly met Ard and his group. As he tried to go around them by going into the street, Ard deliberately got in the way and with an angry look and gritted teeth said, "Hello there Role." Then, according to the defendant, "He began to raise his left hand like he was going under the bib of his overalls and I says 'don't do that Columbus, or I will shoot you.' He kept going on with it and I drew my gun and shot him." He knew Ard's bad reputation and his habit of carrying a pistol and shot to save himself. He had to watch others in the crowd and protect himself from them. Leon Ard came at him with a knife. Burton, who was with McGahan, died before the trial, but his evidence taken before the grand jury was read, and he and another witness sustained the defendant. Neither claimed to have seen the weapon in Ard's hands, but both testified to his movement leading to the belief that he was preparing to draw one. The defendant also proved that Ard was drinking. He had invited his crowd to go with him for some beer, and on the way cursed McGahan and said he was going to kill him the first time he saw him. Afterward the party had some whisky.

The evidence indicating that Ard was a man of bad reputation and had harassed and bullied the defendant during the year, while he sought to avoid him, tends to sustain the defendant's claim that the deceased provoked the difficulty and that he believed it was necessary to shoot to save his life. But the jury was authorized to believe from the evidence beyond a reasonable doubt that he shot and killed Ard in sudden affray or in sudden heat and passion upon provocation reasonably calculated to excite his passion beyond control, and not in his necessary or reasonably apparent

necessary self-defense. The jury may have thought that McGahan believed he was at the moment in immediate danger at the hands of Ard, but that his belief did not rest upon a reasonable judgment. We cannot say that the verdict is flagrantly against the evidence,. which is the only ground upon which a reversal is asked. Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4; Harlan v. Commonwealth, 253 Ky. 1, 68 S. W. (2d). 443.

Judgment affirmed.