JOHN H. TEMMINK v. THE METROPOLITAN LIFE INSUR-
ANCE COMPANY.

*Life insurance—Application—Agent filling in answers of applicant—
Fraud.*

This is a case involving alleged false answers by an applicant for
life insurance to questions regarding past sickness and medical
attendance, and it is held that the facts as to what was asked
and answered rest in the conflicting proofs, and that the jury
must have found that the agent put down answers that the
applicant never made, and that she did not know that she was
signing any such statements, and the case is held not to differ
in principle from *Brown v. Ins. Co.*, 65 Mich. 306, or from
other cases involving similar questions, and the judgment
against the defendant is affirmed.

Error to Wayne.    (Brevoort, J.)    Argued October 23,.
1888.    Decided November 1, 1888.

*Assumpsit* on life insurance policy.    Defendant brings
error.    Affirmed.    The facts are stated in the opinion

*Edmund Haug (C. A. Kent,* of counsel), for appellant.
*Conley, Maybury · & Lucking,* for plaintiff.

CAMPBELL, J.    Plaintiff, who was made payee of a life
insurance policy issued to his wife, sued defendant and
recovered below the amount insured.    The defense set up

was that the policy was issued on false representation and concealment of the state of health of the insured, Mrs. Jennie Temmink. The specific assertions pleaded were—

1. That she had never been sick.
2. That she had never been attended by any physician.
3. That she never had any disease of the lungs.

The policy was obtained November 23, 1885. She died February 23, 1887. The cause of death was sworn to have been consumption, which probably existed when the policy was applied for, and she had some time before that been treated by one or more physicians, who supposed her to be consumptive, although not under care in November, 1885.

Evidence was given of an application on a printed form, which has such blanks as were filed written in by W. P. Fraser, the agent. The applicant's signature is near the beginning of the blank, and at the end of what purports to be a declaration and warranty that all the answers are true. On the back of the blank for the applicant's signature is a printed certificate, signed in the agent's handwriting, that he had made a personal examination, and that the applicant was sound and insurable. The answers filled in and claimed to have been false are these:

"Condition of health? Good. When last sick? Never. Of what disease? None. Name of physician who last attended life proposed, and when? None. Is said life now in sound health? Yes."

There is a long list in small type, like the rest of the blank, comprising in one group 27 forms of malady, and applicant was asked to declare whether she had ever had any of them. In the copy furnished us no answer is put down to this question, although defendant's counsel assumed it was answered negatively, and the original may possibly show it. There were negative answers given to

questions touching tobacco, opium, and alcoholic stimulants.

Upon the trial the agent testified that he put most of these questions, and took down the answers, but he does not remember that he asked her about the particular diseases. When asked if she told him she had never been sick, he said she did so indirectly, and explained this by saying she said she had been sick of coughs, colds, and the like of that, but he says she said she had not had a doctor. He admits he did not ask her any questions concerning stimulants.

On the contrary, the mother of deceased, Mrs. Grootvelt, testified positively to being present, and knowing all that passed between the agent and her daughter. She says the agent, with whom she herself was insured, was somewhat pertinacious in trying to get her daughter to take an insurance, and that he did not question her at all upon the matters referred to. Neither the agent nor the mother testifies that Mrs. Temmink had any instructions as to the purport or importance of the application, or that she read it or was requested to read it, or knew what was put in it. The inference even from the agent's testimony is pretty strong that she had no reason to understand that the application had any important office to fulfill.

The charge of the court referred to the conflicting testimony without attempting to recite it, the trial having been short, and the facts fresh in the minds of the jury. The judge charged the jury upon the effect of the agent's testimony as follows:

"If, on the other hand, you believe that at the time Mr. Fraser, the agent of the company, called at the house, while he was there talking with Mrs. Temmink, the daughter of Mrs. Grootvelt, the wife of the plaintiff here, that he took down all these answers to the questions given by her, and that it was signed by her,—that

these answers, as they appear before you, were signed by her,—then, gentlemen, your verdict should be for the defendant."

He had already charged that if the agent put down answers untruly, and if they believed Mrs. Grootvelt's testimony, plaintiff should recover.

There is nothing in the testimony to indicate that Mrs. Temmink knew what answers the agent wrote in the blanks, or what the blanks contained. The paper was not read to her or by her before it was signed, so far as appears. The agent, when he had written what he did write, asked or told her to sign. All the facts as to what he asked and what she answered, rest in the conflicting proofs.

It is not claimed that, if Mrs. Temmink deliberately and understandingly made the representations she is charged to have made, there could be any recovery. But defendant claims that if consumptive her life was not insurable at all, and needed no assertions or questions, and also that, as the answers were written in before Mrs. Temmink signed the application, she and her estate would be bound.

It appears from the policy itself that consumption is not reckoned as rendering persons uninsurable. It is expressly provided that, if the insured die of consumption within three months, no benefits should be due, and if within a year, only half payment should be made. It also appears that on small policies no medical examination is required, and the agent or company's physician satisfies himself, and his certificate is accepted by the company. Such a certificate was given here. It also appears that for an insurance of $188 the insured, who was 25 years old, made weekly payments of 10 cents, which is a very high premium on sound lives.

We do not think this case differs in principle from the

case of *Brown v. Ins. Co.*, 65 Mich. 306 (32 N. W. Rep. 610), or from other cases involving similar questions. The jury must have found that the agent put down answers that Mrs. Temmink never made, and that Mrs. Temmink did not know that she was signing any such statements. There was nothing to show that she knew what the agent put down, or was told it was important she should know. No instructions were asked by defendant beyond a general request that the jury should find for defendant. If Mrs. Grootvelt told the truth, the agent committed a gross fraud on Mrs. Temmink, and there was nothing to authorize us to hold, if there was anything which would have justified the jury in holding, that she was in any way negligent in signing. The claim that the answers were actually put down in the shape they are now in, before signature, can hardly be said to be sustained, except by the agent's testimony, and this the jury did not believe on the main issue, and may not have believed on anything. It is quite plain that the jury could not have been required to believe that Mrs. Temmink had even so much information as is given by the reading of a written instrument in her hearing by another person. If the document was not truly interpreted to her, or if, as the jury must have found, it was falsely represented, at least by implication, it would be going too far to hold her estopped by what she was in no fault for relying on. By the testimony of all parties the agent assumed the whole preparation of the paper, and she had a right to suppose he did it honestly. It is not her fault if he did not act honestly. We discover no point that is practically open in this State. We think the case does not warrant us in departing from what has been settled here. The judgment must be affirmed.

The other Justices concurred.