SARAH D. ROE, v. NATIONAL LIFE INSURANCE ASSOCIATION, Appellant.

**Life insurance:** APPLICANT'S HEALTH: DECEIT: ESTOPPEL.  Mere ill health at the time of procuring insurance constitutes no defense to an action upon the policy; and unless the insured purposely misled the agent of the company who solicited the insurance into recommending the risk, where but for such deception he would not have done so, the company is estopped to raise the question of insured's health at the time of issuance and delivery of the policy.

**Same:** FALSE STATEMENTS TO EXAMINER.  To constitute fraud in procuring life insurance by means of false statements to the company's examiner regarding the applicant's health, there must have been an intention to deceive and the examiner must have relied upon the false statements, or have been misled by the concealment of facts which in good conscience the applicant should have disclosed.  Evidence held insufficient to show fraud.

**Same:** FALSE STATEMENTS IN APPLICATION.  Fraud cannot be predicated on the answers of an applicant for insurance, where an agent of the company prepares the application, presents it for signature with the statement that it is in accord with the company's rules, and the applicant signs it with no knowledge of its

contents. Under such circumstances the company is estopped from setting up the falsity of the answers as a defense to an action on the policy.

Same: PAROL EVIDENCE. Parol evidence is competent to show the circumstances under which an application for insurance was prepared and signed, not to contradict the writing, but to estop the company from asserting the falsity of the insured's statements therein.

Same: HARMLESS MISSTATEMENTS. Where it is apparent that the insured's misstatements in his application concerning his health did not mislead the company's medical examiner, but that he relied wholly upon his own examination and would have approved the risk had the statements been correct, the company cannot complain thereof.

Same: ESTOPPEL. The provision in a life policy that the same shall not become effective until delivered to the insured while in good health is ineffctive, in view of Code, section 1812, where the examiner for the company approved the risk.

Same: EVIDENCE. Where the incorrect answers of· an applicant for insurance are shown not to have influenced the company's examiner, the weight ordinarily given by him to correct answers to inquiries was immaterial.

Same. The weight an examining physician would have given to the diagnosis of insured's attending physician, had he known·of it, is competent on the question of whether the examiner was misled by the insured's answers in his application.

*Appeal from Polk District Court.*— HON. WM. H. MC-HENRY, Judge.

TUESDAY, MARCH 17, 1908.

THE National Life Insurance Association issued its certificate insuring the life of Thomas S. Roe October 7, 1903, naming his wife, Sarah D. Roe, as beneficiary. The insured died September 4, 1904, and in this action the beneficiary seeks to recover the indemnity promised. The defense interposed was that the insured procured the medical examiner of the defendant company to report him as a fit subject for insurance by fraud, and that the certificate never took effect, owing to a condition therein that it should not become oper-

ative until delivered to the applicant in good health. The reply asserted that the defendant's agent prepared the application and procured the insured's signature thereto without reading it to him, or allowing him to read it, and by reason thereof the association was estopped from questioning the truthfulness of the statements contained therein. After the evidence had been introduced, the court directed a verdict for plaintiff and entered judgment accordingly. The defendant appeals.— *Affirmed.*

*Carr, Hewitt Parker & Wright* and *Sullivan & Sullivan,* for appellant.

*Clark & Byers, Roe & Roe,* and *A. A. McLaughlin,* for appellee.

LADD, C. J. I. The insured may not have been in good health at the time the certificate was issued to him by the defendant, but that alone constitutes no defense. The association was not prohibited from carrying such a risk, nor did the insured owe it the duty of warning it against such an undertaking. It was purely a matter of contract between the parties, and, if each acted in good faith toward the other in making it, there is no reason for relieving either from performance, even though the association may rue its bargain. Insurance companies and associations necessarily act through agents, and their medical examiners are the agents whose duty it is to inquire into the insurability of the applicants for insurance. Unless this association's agent was purposely misled by the deceased and inveigled into recommending him to the association as a fit subject for insurance, when but for such deception he would not have done so, it is estopped from putting in issue whether at the time of the issuance or delivery of the certificate he was a fit subject for insurance or not. Section 1812, Code; *Weimer v. Insurance Ass'n,* 108 Iowa, 451; *Nelson v. Insurance Co.,* 110 Iowa,

1. LIFE INSURANCE: applicant's health: deceit: estoppel.

600; *Stewart v. Insurance Ass'n,* 110 Iowa, 528; *Peterson v. Insurance Ass'n,* 115 Iowa, 668.

In other words, the insurer, having elected to investigate the physical condition of the insured, is bound by the conclusion of its authorized agent and specialist, unless this has

**2. SAME: false statements to examiner.**

been induced by fraud or deceit on the part of the insured, notwithstanding any warranties in the contract to the contrary. This merely requires the parties to deal " at arm's length " when contracting and without reservation on the part of the insurer of the right to reinvestigate the same subject, after the insured has departed this life, with the design of depriving the beneficiary of the bounty intended. This much is said in response to counsel's animadversions on the character of the risk undertaken by the association in issuing its certificate of insurance to the deceased. A company or association is entitled to no more consideration than an individual in being compelled to suffer the consequences of bad bargains, and if an applicant for insurance, without practicing deception either by false representations or concealing facts he should disclose, can obtain a policy of insurance on his life, even though not a good risk, we know of no reason for not enforcing performance of its conditions.

II.   The insured was not a fit subject for insurance, but, as said before, this did not prevent the defendant from promising indemnity upon his death.   He did not knowingly mis-

**3. SAME: false statements in application.**

lead the medical examiner as to his physical condition, nor was such examiner deceived. The deceased was examined by a physician, acting for the defendant, who recommended the risk.   It is estopped then from setting up as a defense " that the insured was not in the condition of health required by the policy at the time of the issuance or delivery thereof unless the report of the physician was procured by or through fraud or deceit of the assured." Section 1812, Code. To constitute such fraud or deceit there must have been an

intention to deceive, and the examiner must have relied on false statements or representations made by the assured or been misled by the concealment of facts which good faith required him to disclose. *Boddy v. Henry,* 126 Iowa, 31; *Ley v. Metropolitan Ins. Co.,* 120 Iowa, 203. Had the negotiations for insurance continued after the application had been made, and the health of the applicant become impaired in the meantime, good faith might have required that he disclose the fact. See *Equitable Ins. Co. v. McElroy,* 83 Fed. 631 (28 C. C. A. 365); *Cable v. Insurance Co.,* 111 Fed. 19, (49 C. C. A. 216). But there was no showing of any delay or of any impairment of his health subsequent to the examination and before the delivery of the certificate. Undoubtedly, some of the statements in the application were not correct. For instance, it was said in answer to questions that he had never had any illness, that he had not consulted physicians, that he had no disease of the heart, and that he was in good health. He had been consulting a physician for several months, and, according to the testimony of the doctor, was then afflicted with a fatal disease of the heart; but the evidence that Roe was not aware of the nature of these answers is conclusive. The defendant's agent prepared the application from information obtained from another application the insured had made to another company some time previous, and, by representing to him that the application was prepared according to the association's requirements, induced him to sign it. The application was prepared in connection with many others, and the manner of doing so was with the consent of the secretary of the defendant association. The only evidence that Roe may have known where the agent obtained the information was that of the latter, who stated: " I asked him to bring down his old policy that I could just copy from the policy I had written him up in the Northwestern Fraternal Reserve, and that I had permission from Mr. Pyle to do so." From this, deceased could not well have inferred that the agent intended to make use of the application, in-

stead of the policy, and, further, that it was his purpose to copy the answers made in that application of the year previous. The physician testified on direct examination that he looked over the answers, and that to his inquiries the applicant said he understood them, and that they were correct; but, on cross-examination the witness admitted that he did not remember whether he asked him if the answers were true or not, and explained that if he did not it was through oversight.

As the applicant knew nothing of the contents of the application, he could hardly have made these statements to the medical examiner, and the latter's testimony as a whole shows conclusively that he had no recollection of the deceased having said that the answers were correct, but had testified in reliance on his custom. Without knowledge of what the application contained, and having signed it on the assurance of the agent that he had prepared it according to the rules and regulations of the association, how can it be said that he acted in bad faith toward the insurer? If the association was deceived, this was owing to the neglect or wrongful manner of its agent in the preparation of the application under the sanction of its secretary, and not because of any deception practiced by the deceased. For this reason the defendant·is estopped from setting up the falsity of the answers in the application as a defense. *Stone v. Insurance Co.,* 68 Iowa, 738; *Donnelly v. Insurance Co.,* 70 Iowa, 693. The above are fire insurance cases, but the same rule is applicable to companies or associations insuring lives as well. *Continental Ins. Co. v. Chamberlain,* 132 U. S. 304 (10 Sup. Ct. 87, 33 L. Ed. 341); *Temmink v. Insurance Co.,* 72 Mich. 388 (40 N. W. 469).

Of course, Roe was aware that he was not in good health, but there is not a word in this record to indicate that he knew that he was afflicted with a fatal disease, or that his malady was other than temporary. The physician who treated him testified that, though he cautioned him to be careful of him-

self, he avoided discouraging him. There is no showing that anything was done to obviate the fullest inquiry and examination. As the agent prepared the application and represented it to be in accord with rules and regulations of the association, Roe was not bound to ascertain its contents, but might rely upon the association having correctly stated the facts. *Donnelly v. Insurance Co.,* 70 Iowa, 693. The association was charged with knowledge of facts brought to the attention of its agent, and therefore, as it issued the certificate with knowledge of how the application was filled out and signed, it cannot be heard to complain that through the acts of its own agent it had been misled and deceived. See *Gurnett v. Insurance Co.,* 124 Iowa, 547; *Helm v. Insurance Co.,* 132 Iowa, 177.

III. The evidence concerning the preparation of the application was received, not to vary or contradict a written instrument, but for the sole purpose of estopping the associa-

4. SAME: parol evidence.

tion from availing itself of the falsity of the statements contained therein as a defense, and was admissible. *Parno v. Insurance Co.,* 114 Iowa, 132, and cases cited.

IV. Nor was the physician shown to have been deceived. He testified, in substance, that he paid no attention to the statement in the application that the insured was in

5. SAME: harmless misstatements.

good health, and would not had the answer been in the negative, and the same was true of the answer that he had "no palpitation or disease of the heart"; that he did not rely on statements contained in the application as to the applicant's general condition of health, but did rely upon the investigation he made by actual examination, that this, with the family history and deceased's statement that he suffered from rheumatism, furnished the basis for his report. He admitted, however, that, had the insured stated that he was being treated by a physician, he would have consulted the latter before reporting to the company, and would have respected his opinion, but would have

relied on his own examination; and, further, that even though that physician had said that the applicant had the heart disease, as he did at the trial, he would have concluded that he was mistaken; that, independent of what he might have ascertained from the physician treating him, taking into consideration the careful physical examination made, he would have recommended Roe to the association as a fit subject for life insurance. This evidence is uncontradicted, and shows conclusively that any misstatements contained in the application did not mislead, and, had the answers been correct, his report to the association would not have been different. In the face of such a record, it is idle for counsel to contend that the recommendation of the medical examiner was the product of an active fraud or of fraudulent concealment.

V. But it is said that, because of a condition in the certificate that it should not become operative until "delivered to the insured named herein while in good health,"

6. SAME: estoppel. the certificate never took effect, for that the insured was never in good health subsequent to the signing of the application. This contention is disposed of by the statute providing that the association shall be estopped by its examiner's report from setting up in defense to an action on such a certificate that the insured "was not in the condition of health required by the policy at the time of the issuance or delivery thereof." Section 1812, Code. This language is conclusive as to the point raised.

VI. Defendant sought to show what weight would have been given ordinarily by an examining physician to correct answers to inquiries in an application for insurance such as

7. SAME: evidence. those involved in this case. The evidence was excluded, and rightly so. It was wholly immaterial, as the incorrect answers were shown not to have influenced the examiner's report. The actual effect having been shown without dispute, the consideration which physicians might have given to the matters if correct was of no importance.

VII. Exception is also taken to the admission of evidence of what weight the, examining physician would have given to the diagnosis of the doctor attending deceased had

8. SAME.

he been aware of it. This evidence was elicited on cross-examination, and was pertinent to the issue as to whether the physician had been misled by the answers contained in the application.

Some other rulings are discussed, but none which could have influenced the conclusion reached, and for this reason they are not reviewed.— *Affirmed.*