IDA V. BOHEN, Appellee, v. NORTH AMERICAN LIFE INSURANCE COMPANY OF CHICAGO, Appellant.

INSURANCE: Fraud as to Physical Insurability—Jury Question.
1  On the issue whether the insured fraudulently, knowingly, deceived the insurer as to insured's physical insurability, a jury question is presented by evidence tending to show: (1) That insured stated positively in the application that she had never had the ailment in question; (2) that she might have such an ailment and not know it; (3) that she stated to a physician, after the policy was issued, that she had been told that she did have such ailment; and (4) that she was, in fact, so afflicted. (Sec. 1812, Code, 1897.)

INSURANCE: Evidence as to Fraud in re Insurability. Evidence that one beneficiary surrendered his policy, on return of premium, is not admissible in an action on another policy, on the issue of fraud as to insurability, even though both policies were issued on the same application.

DEPOSITIONS: Oral Taking Outside State Not Permissible. Depositions may not, in the absence of an agreement, be orally taken outside the state.

APPEAL AND ERROR: Acquiescing in Erroneous Ruling. Error may not be predicated on an erroneous ruling acquiesced in by complainant. So held where, on the suppression of a deposition, the same was retaken.

EVIDENCE: Offers to Confess Judgment. Rejected offers to confess judgment are not admissible in an action on the claim.

EVIDENCE: Relevancy. Evidence tending to show that pregnancy or change of life would render a person noninsurable is quite aside the mark, when the sole issue was whether insured knowingly deceived the insurer, by stating that she did not have an ovarian tumor.

INSURANCE: Reliance on False Representations. The insurer is presumed to rely on a false and material representation of fact, touching the insurability of insured, and it is not error to state in the instructions the necessity for such reliance.

INSURANCE: Fraud in re Insurability—Instructions. On the issue whether the insured had, by fraud, caused the examining physician to certify to her insurability, it is not error to instruct that the fraud must have been actually perpetrated: that is, the company must have been defrauded of its policy.

PLEADING: Amendment Amplifying Point. The allowance of amendments which amplify points already sufficiently pleaded is discretionary with the court.

TRIAL: Permissible Argument. Argument will not necessarily be condemned because couched in the form of forcible figures of speech.

WITNESSES: Instructions in re Credibility. Instructions are properly refused which direct the jury to give the same weight to testimony of witnesses by deposition as to oral testimony of witnesses in open court.

**TRIAL:** **Weight of Testimony.** The jury may be directed, in weighing testimony of statements of a deceased person, to give due consideration to the fact that it is incapable of contradiction.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

## MAY 15, 1920.

FROM judgment against it on a life insurance policy, the defendant appeals.—*Affirmed.*

*Goss & Rooney* and *E. N. Farber,* for appellant.

*F. M. Haradon, Carney & Carney,* and *C. H. E. Boardman,* for appellee.

LADD, J.—I. The defendant issued its policy of insurance on the life of Marie P. Bohen, April 22, 1916. She died, July 3d following. This action was begun on June 27, 1917, and did not come on for trial until January 20, 1919. The defense interposed was that the report of the examining physician, representing the insured a fit subject for insurance, was procured by fraud.

1. INSURANCE: fraud as to physical insurability: jury question.

Under Section 1812 of the Code, the insurer was estopped from setting up, in defense of the action, that the insured was not in a condition of health required by the policy when issued, unless it should be shown that the report of the medical examiner that she was a fit subject for insurance was procured by or through the fraud or deceit of the applicant. *Welch v. Union Central Life Ins. Co.,* 108 Iowa 224; *Roe v. National Life Ins. Assn.,* 137 Iowa 696; *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203. It appears from the record that the insured's brother informed defendant's agent that she desired insurance, and that, on April 14, 1916, the agent obtained her application

for two policies, one in favor of her father as beneficiary, in the sum of $1,000, and the other in favor of her sister, plaintiff herein, as beneficiary, in the sum of $1,500. The applicant was then 42 years old, and had never applied for insurance before. Among the numerous questions asked were the following:

"Q. How long since you have consulted or had the care of a physician, and for what ailments? A. Four years ago, had operation for hemorrhoids; entire recovery. Q. Name and address of physician. A. Mayo Brothers, at Rochester. Q. Have you ever had any of the following diseases: Enlarged glands, goiter, scrofula, cancer, growths, or tumors? A. No. Q. Have you ever had or suspected you had any diseases of the breast, uterus, or ovaries? A. No."

On the 24th day of June following, at Rochester, Minnesota, a surgeon, William J. Mayo, removed from her a large tumor, with a part of the womb, in which it was growing. "Anatomically," as he testified, "it would be described as the removal of all the womb, excepting the neck, and the tumor which it contained." This tumor was attached to a part of the uterus, and was about the size of a fœtus six months advanced, and she appeared enlarged about as a woman would when six months pregnant. The patient died, after she had left the hospital, but while she was still under observation. The witness was unable to say absolutely whether there was any connection between the operation and her death. Though feeling perfectly well, as was made to appear, she suddenly fell dead. The doctor observed that:

"Many women come in here with tumors like that, and don't know anything about it. Never discovered it, until it is found on the table. All the physical signs that would be noticeable by the patient would be the enlarged abdomen."

It´was admitted that, if Dr.. Berkman were present, he would have testified that he was on the diagnosis staff of the Mayo Clinic at the time, and examined the insured, June 13, 1916; that she then stated to him that, approximately two years previous, she had noticed "some sort of growth or enlargement in the lower part of the abdomen, which persisted, and, about a year after first noticing this, she went to a physician for an examination;" that the physician told her she had a tumor of the womb, about the size of an orange; that she stated that the growth had been persistent, and she thought it had greatly increased in size; that she "had some little ache and bearing-down sensation in the right lower abdominal region, coming on at times when she was nervous, tired, and worn out;" that, upon examination he discovered a tumor, which was of fibroid nature, connected with the uterus, which he outlined as "extending practically up to the level of the navel,— roughly, as large as a newborn infant's head;" that there was nothing else in her physical condition, with the exception of a slight valvular heart murmur, discovered not to be indicative of anything; that she had had two other examinations at the Mayo Clinic, one for an indeterminate heart condition, at which, on examination, nothing significant was found, the other time, for hemorrhoidal condition, for which she underwent an operation; that the operation on June 24, 1916, was in the nature of a "subtotal abdominal hysterectomy for fibroid uterus; that the cause of her death was pulmonary embolism."

"Q. Doctor, what, if any, relation was there between the embolism described and the operation in question? A. A distant connection, not relative to the character or site of operation nor the technique."

He, as well as another physician who answered in response to a hypothetical question, was of the opinion that the tumor must have existed at least a year prior to the

operation. The examining physician explained that he did
not make a physical examination of the applicant for
growths or tumors, for the reason that she answered the
inquiry made that she had none; that he took her word;
and that, had she disclosed that she had trouble there, he
would have given her a physical examination, and ascer-
tained her condition. A case was made out for the jury.
That body might have found, from the evidence recited
above, that the insured knew that she was afflicted with a
tumor; that, notwithstanding such knowledge, she denied
having it, in her answer to the medical examiner; that
he was deceived thereby into making his report, when, had
she answered truly, he would not have made the report as
he did, but would have ascertained the truth, and have re-
ported her true condition to the company, and the policy
would have been refused. The record leaves little or no
doubt that she was not a fit subject of insurance, at the
time of the application, or at the time of the issuance of
the policy. The only fairly debatable question is whether
she knew this,—that is, was aware of the existence of the
tumor, at the time of her medical examination, and pur-
posely misled the examining physician into recommending
her as a fit subject of insurance to the defendant company.
Fraud is never presumed, but is always to be proven. She
denied having a tumor, in answer to the question by the
medical examiner. That she might have been so afflicted,
without knowing it, appears from Dr. Mayo's testimony.
Dr. Berkman swore that she had told him that she had
noticed, about two years before the examination, a growth
or enlargement in the abdomen, which persisted, and that
a physician had advised her, about a year before, that she
had a tumor about the size of an orange. As only the two
were present at the conversation, and the patient's lips
were closed by death, his testimony of her declarations
is to be scrutinized cautiously, and it, as well as his credi-

bility, tested as ordinarily is done under like circumstances. See *Holmes v. Connable,* 111 Iowa 298; *Watson v. Richardson,* 110 Iowa 673. The evidence was of alleged statements on the part of deceased. Such testimony is subject to imperfection and mistake, resulting from misunderstanding, or imperfect memory as to what was, in fact, said, or misinterpretation of the words uttered, or their meaning as actually spoken. For these reasons the case is to be distinguished from *Pumphrey v. Walker,* 71 Iowa 383, and *Mahoney v. Dankwart,* 108 Iowa 321, as well as *Lavalleur v. Hahn,* 167 Iowa 269. *Kauffman v. Logan,* 187 Iowa 670, where the witness' testimony was regarded as conclusive against a mere presumption, in other respects differed from the case at bar. See *Sonnentheil v. Christian Moerlein Brewing Co.,* 172 U. S. 401 (43 L. Ed. 492). The record was such as to carry to the jury the issue whether insured knowingly deceived the examining physician as to the existence of the tumor.

II. A policy in the sum of $1,000, naming Edward B. Bohen as beneficiary, was issued on the same application as that in suit, and, in the second division of the answer, appellant so alleged, and that said policy

2. INSURANCE: evidence as to fraud *in re* insurability.

was procured in the same way as alleged in this suit, and further, that, upon the tender of the premium paid, the beneficiary surrendered the policy to the company. This last part, with reference to the surrender of the policy and the tender of the premium, was stricken out, on motion of the plaintiff. The ruling, though complained of, was correct. Whatever Edward B. Bohen did with his policy was without probative force as to whether it was procured by deception or not, and was not a circumstance bearing on the issue of fraud to be considered by the jury. The ruling has our approval.

III. At the beginning of the world war, Dr. Berkman, who had examined deceased at Rochester, Minnesota, entered

the army as surgeon, with the rank of captain, and was first
stationed at Fort Riley, Kansas. The de-
fendant moved for an order directing the
taking of his deposition orally. Such an
order was entered; but, before the depo-
sition was taken, he was tranferred to Atlanta, Georgia,
and, on motion, the order was modified accordingly, the
deposition taken on oral interrogatories, and filed January
18, 1919. The order, as well as the modification, was entered
over the objections of plaintiff, and the latter especially
insisted that the court was without authority to order the
evidence to be taken orally outside of the state. On this
and other grounds, plaintiff moved to suppress the depo-
sition. The motion was sustained, and of this ruling de-
fendant complains.

3. DEPOSITIONS:
oral taking
outside state
not permissible.

The power to issue commissions for the taking of de-
positions has long been regarded as inherent in a court
of equity, unless limited by statute; but it is well settled
that, at common law, courts at law had no authority to issue
commissions to take the testimony of witnesses *de bene esse.*
Litigants were compelled to resort to chancery, or obtain
the consent of the adverse party, to procure the testimony
of witnesses abroad by depositions. To remedy this in-
convenience, statutes have been passed in this and other
states, providing for taking of depositions of nonresidents
of the state, and the authority so to do rests solely upon
these statutes. *Missouri & N. A. R. Co. v. Daniels,* 98 Ark.
352 (136 S. W. 651); *Paddock v. Kirkham,* 102 N. Y. 597
(8 N. E. 214); *International Coal Min. Co. v. Pennsyl-
vania R. Co.,* 214 Pa. 469 (63 Atl. 880); *Simpson v. Carleton,*
1 Allen (Mass.) 109 (79 Am. Dec. 707); *Kaelin v. Common-
wealth,* 84 Ky. 354 (1 S. W. 594). See *Russell v. Fabyan,*
35 N. H. 159, where the courts exercise the power, suppos-
edly in consequence of a statute conferring on the superior
court of that state "all power, jurisdiction, and authority

of the courts of King's Bench, Common Pleas, and Exchequer in England," the latter possessing all the powers of a court of chancery as to taking depositions. See, also, 18 Corpus Juris 606, and cases cited in note.

Our statutes very fully cover the taking of depositions of nonresidents; and, without expressing an opinion as to whether a commission may be ordered in a chancery suit, to take the depositions on oral interrogatories of a witness outside of the state, we have no hesitation in holding that the court is limited to the method the statutes prescribe, in actions at law. In the absence of an agreement to the contrary, written interrogatories are to be filed and served on the opposite party, as provided in Section 4689 of the Code, and, if no cross-interrogatories are filed by the party, the clerk of court is required to submit the interrogatories, as directed in Code Section 4692. The adverse party may, upon serving notice as required, appear and orally cross-examine the witness, and, if the adverse party elects to examine the witness orally, the party suing out the commission may waive his written interrogatories, and appear and orally examine. Section 4693 of the Code. Only as so provided may depositions be taken orally, in part or wholly, save by consent, beyond the borders of the state, and we are of the opinion that the court erred, both in entering the order and in modifying it, so as to require the depositions of Dr. Berkman to be taken on oral interrogatories in another state, more than 1,500 miles from the place of trial. The above orders were entered by a judge other than the one presiding at the trial, and the ruling subsequently entered, suppressing the deposition, has our approval.

4: APPEAL AND ERROR: acquiescing in erroneous ruling.

Even though the ruling in suppressing the deposition had been erroneous, the defendant waived the error by acquiescing therein. It procured, on its application, a continuance, to enable it to take the deposition

over on the 2d of September, 1918, and, on October 17th following, another application for continuance was filed, and ruling thereon postponed, because of the discharge of the jury.   On January 11, 1919, the court sustained this last motion, and, shortly thereafter, the plaintiff admitted that the witness, if present, would testify as set forth in the motion, and that portion was read to the jury at the trial.   By moving for a continuance, to permit the taking of the deposition over, and later availing itself of what the witness would have sworn to, the defendant necessarily acquiesced in the order suppressing the deposition previously filed, and error might not be predicated on the order suppressing.

IV.   The agent who obtained the application testified that he tendered a draft for $28.59 to the plaintiff. Counsel then remarked:

"For the purpose of examining this witness, the defendant offers and reads in evidence Exhibit 4, the draft identified."

An objection as incompetent and immaterial to any issue, and that the draft did not constitute a tender, and that the matter was covered by the pleadings, was sustained "in view of the statement made at the opening of the case."   The ruling was correct, if for no other reason than that it was not necessary that the draft be read, in order to enable counsel to examine the witness.   The return of a like amount had been tendered in the answer, with interest from the time the premium on the policy had been paid, including the court's costs up to that time, and an offer to confess judgment therefor.   The plaintiff had declined the tender, and refused to accept the offer to confess judgment; and, under Section 3817 of the Code, this might not be given in evidence.   We know of no issue on which the evidence would have had any bearing.   If the policy was

5. EVIDENCE: offers to confess judgment.

procured by fraud, judgment must have been entered on the offer to confess judgment against defendant and against plaintiff for costs subsequently accruing; if the policy was not procured by fraud, judgment must have been entered as prayed.

V.   The examining physician testified that, had the applicant's answers disclosed the existence of a tumor, or indicated that there might have been such an ailment, he would have required her to undergo an ex-

6. EVIDENCE: relevancy.

amination, to ascertain what the trouble might be, and the report would have so represented, and he would not have made the report such as was submitted to the company.  He was then asked:

"You may state whether or not, if, instead of the answers to those parts of Questions 12 and 15 being all in the negative, they or any part of them had been in the affirmative, disclosing that this applicant had any of the diseases or disability inquired about, whether she would have been, in your opinion, an insurable risk."

This question was objected to as incompetent, immaterial, a mere conclusion of the witness, and not within the issues.  The objection was sustained.  That part of the question under Question 12 was that relating to the tumor. The questions a, b, and f, of Question 15, were as follows:

"a.   Have you ever had or suspected that you had any disease of the breast, uterus, or ovaries?  A. No."  "b. Have you had change of life: if so, when?  A. No." "f. Are you now pregnant?  A. No."

No complaint is made because of falsely answering as to her change of life or pregnancy, and, therefore, the question as to each of these was immaterial.  Nor was there any proof tending to show that she falsely answered the question as to pregnancy.  Whether a tumor attached to the uterus is to be classified as a disease, we are not advised by the record.  The only issue raised on which there was

evidence was whether she had a tumor, and she answered
that she did not have one. We think it was improper to call
for an opinion of the witness as to whether, if the applicant
had been suffering from a disease of the breast or ovaries,
or had had change of life, or had been pregnant, she would
have been an insurable risk, because these issues were not
involved in the case. There was no error in sustaining
the objection. The physician had previously disclosed that,
had she answered with respect to the tumor in the affirma-
tive, he would have examined the applicant, and reported
whatever facts he ascertained to the company. This is all
he was prevented from doing by the applicant's answer.
The report would have conveyed to the company the facts
as he ascertained them, and would have been such a report
as contemplated by Section 1812 of the Code. *Boulting v.
New York Life Ins. Co.,* 182 Iowa 797. The parties seem
to have assumed that the existence of a tumor such as
was removed would render her a noninsurable risk, and we
think that the evidence fully justifies such an assumption.

VI. In the fifth paragraph of the charge, the court in-
structed that, in order to make out a defense, (1) there
must be a material representation of an existing fact, (2)
charge was false, (3) so known to be, (4)
made with intent that defendant rely there-
on, (5) that its examining physician relied
and acted thereon, and (6) that the com-
pany was thereby defrauded. The exception is that the
fifth and sixth divisions required a greater amount and
degree of proof than exacted by law; that only a finding
that the examiner's report was procured by fraud was es-
sential to constitute a defense; and that no fraud would
occur until money had been collected on the policy. Upon
report to the company by the medical examiner, it was
estopped from setting up, as a defense to the action on the
policy, that the assured was not in a condition required

7. INSURANCE:
reliance on
false repre-
sentations.

by that instrument at the time of its issuance, unless the report was procured by or through fraud or deceit of the insured. Section 1812 of the Code. Upon such finding, said estoppel is removed; but this alone does not constitute a defense. It merely removes the barrier to prove that the insured was not in a condition of health required by the policy at the time of its issuance. But this defense might not be made out if, in issuing the policy, the company did not rely upon the insured's being in a condition such as that instrument required. Thus, if it were issued with knowledge on the part of the company that she had a tumor, the evidence thereof would not defeat the policy; for, in such event, it must have found her an insurable risk. There was no error, then, in exacting a finding that the company, as well as the examining physician, relied upon the representation with respect to the existence of the tumor, though such requirement might well have been omitted; for the company is presumed, in the absence of any showing to the contrary, to have acted in reliance on the report or certificate of the examining physician, when it issued its policy.

The sixth division is criticised for that, as is said, "no actual defrauding of defendant company, except through its examiner, would occur, until something was collected on the policy." Unless the deception alleged to have been practiced on the physician was effective in procuring a report from him to the company which otherwise would not have been obtained, and a policy based thereon, there was no fraud perpetrated. In other words, the fraud must have been accomplished, in order to be actionable. One may intend to defraud, or may actually deceive; but, if the object is not accomplished,—that is, the proposed fraud not consummated,—an action for fraud may not be maintained. As the physician's report was made and the policy issued, there was no occasion for submitting to the jury that the

8. INSURANCE: fraud *in re* insurability: instructions.

defendant must have been defrauded. On the other hand, it was not error to instruct that the fraud must actually be perpetrated: that is, the company must have been defrauded of its policy by the applicant.

VII. After both parties had rested, the defendant filed an amendment to its answer. The court sustained the motion to strike, on two grounds: (1) That amendment was not necessary for the submission of the issues in the case; and (2) because it was filed too late. Though alleging more particularly the alleged perpetration of the fraud, this was sufficiently specific in the answer, and there was no occasion for the amendment. Striking it from the files was discretionary. Nor was there any abuse of discretion in refusing to recall the examining physician, "to amplify the testimony already introduced," and to testify concerning an undisclosed point which counsel thought he had overlooked. No sufficient ground for opening the case was suggested, and the court did not abuse its discretion in refusing to allow further examination of the witness.

9. PLEADING: amendment amplifying point.

VIII. The appellant also objected to the argument of plaintiff's counsel, in which the latter remarked that he did "not want the jury, at the instance of any insurance company, to write an epitaph upon the tombstone of Marie P. Bohen that she was a cheat and a fraud." This merely suggested somewhat forcibly the consequence of an adverse conclusion by the jury, and the attorney was within the rule which does not require him to forego all the embellishments of oratory, or to leave uncultivated the fertile field of fancy. *State v. Burns,* 119 Iowa 663.

10. TRIAL: permissible argument.

IX. Complaint is made that the court gave the tenth instruction, instead of the fourth, requested by the defendant. In the latter, the jury would have been told, had it

been given, to give the same weight to the

**11. WITNESSES: instructions *in re* credibility.** testimony of witnesses contained in depositions as they would if by the witnesses in open court. This would not have been correct; for the jury may, where the testimony is taken orally, consider the attitude of the witness while testifying, and this might not be done when the testimony is by deposition.

**12. TRIAL: weight of testimony.** In the tenth instruction, the court pointed this out, and added that the jury might consider the reasonableness or unreasonableness of their testimony, and also that the lips of the insured were closed by death, and that any statement she was said to have made could not, in the nature of things, be contradicted. Contrary to the contention of appellant, this cannot be construed as an appeal to sympathy, or as reflecting on the witnesses Mayo and Berkman, or questioning the truth of their testimony; but it did require their testimony to be subjected to precisely the same tests as that of other witnesses under similar circumstances. There was no error in so doing. The eighth instruction is criticised, but no exception was made thereto in the trial court.

What we have said disposes of all questions designated by appellant as "the principal matters complained of," and others. Still others are suggested; but, as none of these are fairly debatable, we are content in saying that such rulings have our approval. The motion of appellee, for the assessment of penalty, is overruled.—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.